# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| JESSIE LEE SAWYER<br>    LA. DOC #86938 | CIVIL ACTION NO. 3:10-cv-0618 |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| LOUISIANA DEPT. OF CORRECTIONS | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Jessie Lee Sawyer filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on April 9, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC).  He is incarcerated at the Richwood Correctional Center, Monroe, Louisiana, however he complains about the conditions of confinement and other circumstances he experienced  while he was incarcerated at the Madison Parish Correctional Center (MPCC), Tallulah, Louisiana.  He sued the LDOC, Madison Parish Sheriff Larry Cox, Nurses Wanda Nolan and Lidia Smith and the "Nursing Administration" at MPCC.  He prayed for an order prohibiting MPCC from housing LDOC inmates and for an unspecified amount of money damages for pain and mental anguish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE**

### *Background*

#### 1. Original Complaint [Doc. #1]

Plaintiff is an LDOC inmate. When he filed his complaint on April 9, 2010, he alleged that

he had been housed at MPCC for 18 months. He provided a litany of complaints:

On some unspecified date he complained of a tooth ache to Nurse Nolan. She arranged for a dental examination and over the course of time the dentist pulled all of plaintiff's teeth – the last five at one time. (Plaintiff claims that the teeth could have been fixed and he disputes the need for extraction. Further, he contends that only two teeth should be pulled at a time.) Plaintiff complained that he was not provided adequate medication for pain following the extractions.

Plaintiff was not provided dentures and even though he expressed his willingness to pay for dentures on February 16, 2010, MPCC authorities would not allow him to contact a dentist for that purpose. Plaintiff was unable to eat the "hard fried greasy food" served at the prison.

He complained that MPCC has no dietician ; that the meals are inferior; and that prisoners must eat their meals near the toilets and shower area. He complained that since he cannot tolerate the prison diet, he had to purchase over-priced food from the commissary.

He complained that inmates suffered from respiratory problems; however, Nurse Nolan treated them with "common cold" remedies.

Plaintiff complained that grievances were not answered.

He complained that a convicted sex offender had access to all prisoner files and was allowed to teach the GED classes. He complained that this inmate was  allowed to leave the prison from time to time.

Plaintiff complained that the fire alarms did not function; that the air vents in the shower area were rusted and clogged with dust; and, that there were no hand-rails for handicapped prisoners.  He also complained that the water was undrinkable.

He claimed that corrections officers sold contraband cell phones to prisoners and then lodged

2

disciplinary charges against the prisoners.

On August 19, 2010 plaintiff was directed to amend his complaint to provide more specific allegations. [Doc. #13]

### 2. Amended Complaint [Doc. #14]

In his amended complaint filed on August 24, 2010, plaintiff made the following allegations:

In November 2009, plaintiff made several complaints about treatment to "Madison Correctional Center Administration and Sheriff Larry Cox..." He did not receive a response.

Plaintiff complained that Nurse Wanda Nolan, Nurse Lidia Smith and Dr. Woodruff, a dentist in Marksville, pulled five of plaintiff's teeth and prescribed no medication for pain, infection or swelling.

Plaintiff complained to Larry Cox and "Madison Parish Administration" that the Nursing Administration would not allow him to purchase dentures with his own funds. According to plaintiff, he was unable to eat the prison food and therefore purchased his own meals from the prison commissary. Plaintiff claimed that this circumstance forced him to spend "large amounts of money."

Plaintiff also complained about treatments and medication prescribed to inmates complaining about respiratory problems. According to plaintiff, inmates received "...medication for a common cold."  He claimed that this treatment was ineffective "because inmates never seen Doctor or went to the hospital about this problem due to medical staff not wanting to do a follow up..."

Plaintiff wrote several grievances to Sheriff Cox about the rusty vents, rusty fire sprinklers, and,  the lack of handicap rails in the shower and restrooms.

Plaintiff also complained about the dog kennel being in close proximity to the kitchen and dormitory causing "bugs and bad smells".

In October 2009, plaintiff complained to the nursing staff about boils which he claimed were caused by unsanitary living conditions. He was provided Ichthammol Ointment 20%, Triple Antibiotic Ointment, and Mupirocin Ointment 2% which he claimed caused the boils to spread to his legs and back area.. He requested an examination by a physician and was in fact afforded an examination, however, the physician prescribed the same medication and no follow up examinations were ordered until plaintiff was transferred to Richwood Corrections Center in May 2010.

Plaintiff complained about the water to Sheriff Cox; he also complained that the sewerage treatment plaint was located within 200 yards of the inmates' recreational area. Plaintiff complained that bottled water could be purchased from the commissary but it was overpriced.

Plaintiff complained to Sheriff Cox that other inmates had access to personal records and that convicted sex offenders were allowed to move to a location of their choice, including locations outside the prison compound.

Plaintiff complained to Sheriff Cox that Sgt. Boston and other guards sold cell phones to inmates and then charged them with disciplinary rules violations which resulted in the forfeiture of the inmates' good time credits.

### Law and Analysis

### 1. Screening

Pursuant to the provisions of Title 28 U.S.C. § 1915A, federal courts are authorized to review, before docketing, if feasible, or in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. This review allows the court to identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or

4

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  In *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir.1998), the Fifth Circuit held that Section 1915A applies even when a prisoner, like the plaintiff herein,  has paid the required filing fee.

A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir.2001) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997)).

Plaintiff has alleged a series of complaints. He was afforded the opportunity to amend his original complaint to provide additional factual support for his claims. He need not be afforded any further opportunity to amend. Accepting his allegations as true, it is clear that plaintiff's claims are frivolous, or fail to state a claim for which relief may be granted, or, as is the case with his claims against the LDOC, seek monetary relief from defendants who are immune from suit.

## 2. Medical Care

On some unspecified date plaintiff complained of a tooth ache to Nurse Nolan. She arranged for a dental examination and over the course of some as yet unspecified period of  time all of plaintiff's teeth were extracted. Plaintiff complained that the dentist should not have pulled his five remaining teeth on the same date; he also complained that he was not afforded proper medication for pain and to ward off infection. Finally, he complained that he was not allowed to purchase

dentures.

He also complained, in general, that inmates complaining of respiratory problems were given common cold remedies.

Plaintiff complained that in October 2009 he suffered from boils. When he complained, the nurse treated the boils with Ichthammol Ointiment, Triple Anti-biotic Ointment, and Mupirocin Ointment. He requested an examination and treatment from a physician and was afforded both examination and treatment. According to plaintiff, the physician prescribed the same medication and treatment previously provided by the nursing staff.

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447 (5th Cir. 2001) at 458-59 (emphasis supplied) Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

6

Thus, even "... the failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response </u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).  Disagreement with diagnosis and treatment cannot support a claim of deliberate indifference.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995);  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.  The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.  Prisoners are not constitutionally entitled to the best medical care that money can buy. See *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.*

Merely alleging that the defendants should have undertaken additional diagnostic measures

or utilized an alternative methods of treatment does not elevate the claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) (A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference).

Here, plaintiff admitted that he was treated – for his dental problems, for his respiratory problems, and for boils. Plaintiff merely disagrees with the diagnosis and treatment afforded by the defendants and thus his complaint fails to state a claim for which relief may be granted.

Finally, even if the facts alleged are sufficient to establish negligence or even malpractice on the part of the defendants, as has been implied by plaintiff, those allegations, taken as true for the purposes of this Report, do not establish deliberate indifference. As previously noted, the failure to alleviate a significant risk that the defendant should have perceived, but did not is insufficient to show deliberate indifference. Compare *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Nor may deliberate indifference be inferred in this instance from the defendants' possibly negligent or even a grossly negligent response to plaintiff's condition. See *Thompson*, 245 F.3d at 459 (emphasis supplied).

### 3. Meals

Plaintiff complained that the facility does not employ a dietician and that the meals served at the prison are inferior. He also complained that he was unable to eat the food – which he described as "hard," "fried," and "greasy" after his teeth were extracted.

The Constitution mandates that detainees and inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.' " *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also

8

*Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996) ( per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food.").

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.' " *Talib v. Gilley*, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

Here, plaintiff does not allege that he was denied anything close to the "minimal measure of life's necessities...". Nor did he allege any specific physical harm resulting from the defendants' alleged dietary failures. He did not claim that he was at all undernourished, or that he lost weight or suffered any other adverse physical effects as a result of the complained of diet; nor did he intimate that he would suffer absent this court's intervention into the dietary operations of the prison. Plaintiff offered only a conclusory allegation that the prison diet was inappropriate and that is insufficient to state a claim for which relief might be granted.

### 4. Conditions of Confinement

Plaintiff complained that prisoners must eat their meals near the toilets and showers, that the fire alarms do not function, that the shower vents are rusty and clogged with dust, and, that there are no rails for handicapped prisoners. He complained that the prison kennels are in close proximity to the kitchen and dormitory. Plaintiff complained that a sewerage treatment plant is located within 200 yards of the inmates' recreation area. He also complained that the water is rusty and virtually undrinkable, although he conceded that bottled water was available – at a price – in the prison commissary.

9

Complaints about prison conditions – like medical care complaints – are also analyzed under the Eighth Amendment's proscription of cruel and unusual punishment.  The Eighth Amendment does not prohibit punishment, however,  it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).  Additionally, while  the Eighth Amendment does not mandate comfortable prisons,  it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).  As shown above, Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Second, under a subjective standard, it must be shown that the responsible  prison  officials  acted  with  deliberate  indifference  to  the  prisoner's  conditions  of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture – the infliction of pain without penological purpose – such conditions may be considered as  cruel and

unusual punishment under the Eighth Amendment.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

The conditions alleged in plaintiff's complaint simply do not rise to the level of Eighth Amendment violations.  Further, with regard to each of these claims, plaintiff has not alleged that he sustained anything other than *de minimis* [1] harm or injury as a result to his exposure to the complained of conditions.  The only complaints of injury were the conclusory claims that he sustained respiratory problems and boils as a result of his exposure to various conditions. Federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  However, even if accepted as true, he has alleged no more than a *de minimis* injury resulting from his exposure to the complained of conditions.

In order to recover damages for exposure to dangerous conditions, a prisoner must show that he suffered an actual physical injury. See 42 U.S.C. § 1997e(e); compare *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir.2003, *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004).  Plaintiff, at worst, was inconvenienced and not injured or otherwise harmed by the conditions complained of; these conditions cannot rationally be equated to "cruel and unusual

---

[1]  It has been suggested that "...an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?" *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997).   A more than *de minimis* physical injury, as defined by § 1997e(e) and the jurisprudence,  "... is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *Id.*

punishment" since the deprivations alleged were not so extreme as to "... rise to a level that results in physical torture..." *Bradley v. Puckett*, 157 F.3d at 1025.  The injuries sustained are all *de minimis*, at worst. Plaintiff's Eighth Amendment conditions of confinement claims are  frivolous.

### 5. Privacy Concerns

Plaintiff complained that a fellow inmate – who is a convicted sex offender – has access to all prisoner files and is allowed to teach the prison GED classes. He also complained that this inmate is allowed to leave the prison grounds from time to time. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).  Plaintiff makes no showing that the fault alleged herein violated the Constitution and laws of the United States. There appears to be a consensus among the United States Courts of Appeal that prisoners have no absolute constitutional right in the privacy of their medical records. See *Walker v. Gerald*, 2006 WL 1997635 (E.D.La. 2006) and the cases cited therein.

To the extent that plaintiff might imply a right and cause of action pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, §§ 261-264, 110 Stat.1936 (1996), his claim fares no better.  HIPAA is the federal statute which generally provides for confidentiality of medical records. However, as further noted in *Walker v. Gerald*, "... HIPAA provides no express or implied private cause of action for its violation..." *Walker*, at *6 and cases cited therein.

### 6. Actions of Prison Guards

Plaintiff complained that corrections officers sold contraband cell phones to inmates and then

lodged disciplinary charges against those inmates which resulted in the loss of good time credits. Plaintiff has not, however, alleged that he was thus victimized.

Plaintiff invokes the jurisdiction of this court and seeks redress pursuant to 42 U.S.C. § 1983. That statute creates a cause of action against any person who, acting under color of state law, causes another to be deprived of a federally protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S .Ct.1920, 64 L.Ed.2d 572 (1980); *Phillips v. Monroe County*, 311 F.3d 369, 373 (5th Cir.2002), *cert. denied*, 539 U.S. 914, 123 S .Ct. 2274, 156 L.Ed.2d 130 (2003).

The jurisdiction of a federal court may be invoked when a plaintiff has suffered some threatened or actual injury as a result of an allegedly unconstitutional action. The judicial powers given to federal courts under Article III of the United States Constitution exist only to redress or protect against injury to a complaining party. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Therefore, in order to have "standing" to bring a claim in a federal court, a plaintiff must allege actual or threatened "injury in fact, economic or otherwise." *Association of Data Processing Orgs. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed .2d 184 (1970). "Standing defies precise definition, but at the least insists that the complained of injury be real and immediate rather than conjectural, that the injury be traceable to the defendant's allegedly unlawful conduct, and that relief from the injury must be likely to follow from a favorable ruling." *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir.) (*en banc*), *cert. denied*, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 135 (1992)." The facts as alleged by plaintiff do not establish that he suffered any injury as a result of the complained of acts of the defendants.

Since plaintiff sustained no injury as a result of this activity he therefore he lacks standing

to sue under § 1983.

### 7. Grievances

Finally, plaintiff claimed that the addressed all of these complaints in prison grievances to Sheriff Cox, however, each grievance was ignored. Plaintiff maintains that the problems he encountered in attempting to obtain redress through the prison grievance system violated his right to Due Process as guaranteed by the Fourteenth Amendment.

Plaintiff's due process arguments is frivolous. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, as is alleged here, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 92 Fed.Appx. 77, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (citing *Sandin*, *supra*, and finding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)(Burger, C.J., concurring)(applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution

14

creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)*(concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Since the Fourteenth Amendment does not provide a constitutionally protected right to a prison grievance procedure, plaintiff's due process claim is frivolous.

### 8. Claims Against the LDOC

Plaintiff sued the Louisiana Department of Corrections, however, the Louisiana Department of Public Safety and Corrections is absolutely immune from suit due to the Eleventh Amendment. *See Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir.1999); *Rogers v. Department of Corrections*, 263 F.3d 163 (5th Cir. 2001).

### Conclusion and Recommendation

Plaintiff has not shown that the defendants, or anyone else, were deliberately indifferent with regard to his medical care and conditions of confinement claims; further, he has not shown fault on the part of the defendants with respect to his remaining claims.  His claims against the defendants should be dismissed as frivolous and for failing to state a claim for which relief may be granted. Finally, his claim for money damages  against the LDOC must be dismissed since this defendant is immune from suit.

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and for seeking a money judgment from a defendant who is immune from suit, all in accordance with the provisions of 28 U.S.C. §1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, October 1, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

16